UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MANDEL BROCK,

                    Plaintiff,

        -against-                          11 CV 207 (RJS)

THE CITY OF NEW YORK, JOHN
MARIDUENA, GOBINJEE BANIA, and
JOHN DOES 1-6,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL


                                              REIBMAN & WEINER

                                              Attorneys for Plaintiff Mandel Brock

                                              26 Court Street, Suite 1808
                                              Brooklyn, New York 11242
                                              (718) 522-1743

<u>Of Counsel</u>:
Michael B. Lumer, Esq.

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I            FEDERAL DISTRICT COURTS HAVE
                   JURISDICTION TO SUPERVISE AND
                   DISQUALIFY COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT II           ACTUAL CONFLICTS EXIST BETWEEN THE INDIVIDUAL
                   DEFENDANTS AND COUNSEL
                   SUCH THAT COUNSEL'S DISQUALIFICATION
                   IS WARRANTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.   The Unconsummated Settlement:
            Defense Counsel's Loyalties Are Divided
            Between the Municipal and Individual Defendants. . . . . . . . . . 5

       B.   Concordant Representation Compels
            A Hearing into the Alleged Waiver,
            If Disqualification is Not Granted    . . . . . . . . . . . . . . . . . . . . . 7

       C.   The Conflict Between Defendant Bania's
            Deposition Testimony and his purported Letter
            Requesting Representation Requires a Hearing . . . . . . . . . . . . 8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MANDEL BROCK,

                         Plaintiff,

                -against-                                   11 CV 207 (RJS)

THE CITY OF NEW YORK, et al.,

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PRELIMINARY STATEMENT

        Mandel Brock commenced this lawsuit against the City of New York in January 2011, alleging that he was falsely arrested by members of the New York City Police Department ("NYPD") on March 21, 2009.  Plaintiff subsequently amended the action to name the two individual defendants.  The New York City Law Department, by Assistant Corporation Counsel Gregory Mouton, Plaintiff now moves for an order disqualifying counsel based on actual conflicts between (i) the jointly represented defendants that have caused defense counsel to sacrifice the interests of the individual defendants in favor of the municipal defendant; and (ii) defendant Bania and defense counsel resulting from Bania's pending lawsuit against the City of New York, and the testimony given by Bania concerning when he retained defense counsel in this action.  The relevant facts and chronological events are set forth in the Declaration of Michael Lumer, dated February 3, 2012, and are incorporated by reference herein.

## ARGUMENT

## POINT I

### FEDERAL DISTRICT COURTS HAVE JURISDICTION TO SUPERVISE AND DISQUALIFY COUNSEL

It is well settled that federal district courts have the authority "to disqualify attorneys in litigation pending before them" when it is "necessary to preserve the integrity of the adversary process. . . ." *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1245-46 (2d Cir. 1979). We are mindful that this authority is not to be exercised lightly, and disqualification is disfavored. *Id.*. However, disqualification may appropriate if there is an actual conflict between the attorney and the client that will work a prejudice to the client. An "attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States of America v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002), citing, *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993) (internal quotation marks omitted).

As discussed below, there are three actual conflicts at issue. The first plainly pits the interests of the municipal defendant against the two individual defendants and has already worked to the latter's detriment. That is because defense counsel, directly employed by the City of New York, has engaged in a course of conduct designed to further interest of the municipal defendant at the expense of counsel's individual clients. The second is an actual conflict involving possible concurrent representation, and the third concerns a conflict

2

between ACC Mouton and defendant Bania. These conflicts weigh heavily in favor of of disqualification. At a minimum, a hearing should be held to determine the scope of the conflicts and whether these conflicts can be or have been knowingly and voluntarily waived.

Furthermore, as the Second Circuit has held, where there is an issue as to whether a conflict exists that warrants disqualification, "the other parties to the litigation are entitled to the assurance of an on-the-record consent sufficient to preclude any subsequent challenge to a judgment by either of [the jointly represented clients] because of [counsel's] joint representation." *Oneida of Thames Band v. New York*, 757 F.2d 19, 22 (2d Cir. 1985).

### POINT II

**ACTUAL CONFLICTS EXIST BETWEEN THE INDIVIDUAL DEFENDANTS AND COUNSEL SUCH THAT COUNSEL'S DISQUALIFICATION IS WARRANTED**

It is well established that a potential conflict exists in §1983 actions where a municipal defendant's counsel already represents the individual defendants. *See, e.g.*, *Patterson v. Balsamico*, 440 F.3d 104, 114 (2d Cir. 2006); *Rodick v. City of Schenectady*, 1 F.3d 1341 (2d Cir. 1993); *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir.), amended on other grounds, 748 F.2d 69 (2d Cir. 1984). By all accounts, under that scenario, without both an actual conflict and prejudice from that conflict, disqualification would be inappropriate. *Id.*.

An actual conflict of interest exists where "the attorney's and defendant's interest diverge with respect to a material factual or legal issue or to a course of action." *Schwarz*, 283 F.3d at 91. The conflict must adversely affect the attorney's performance. *United*

*States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004), citing *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994). "To prove that an actual conflict adversely affected counsel's performance, a defendant must show that a 'lapse in representation resulted from the conflict.'" *Williams*, 372 F.3d at 106, citing *United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995); *see also, Schwarz*, 283 F.3d at 92. A client can prove a lapse in representation by showing "that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Williams*, 372 F.3d at 106, citing *Levy*, 25 F.3d at 157.

Here, the conflicts are actual and, in at least one instance, have already prejudiced the individual defendants. Disqualification would be appropriate under the circumstances. Certainly, at an minimum, the Court must conduct a hearing to examine the scope of the conflict, whether the conflict is waivable, and if so, whether the defendant has knowingly and voluntarily agreed to such a waiver. *Oneida of Thames Band v. New York*, 757 F.2d 19, 22 (2d Cir. 1985), citing *In re Taylor*, 567 F.2d 1183, 1191 (2d Cir. 1977); *Petition of Trinidad Corp.*, 229 F.2d 423, 430 (2d Cir. 1955). Plaintiff is entitled to have these issues explored on-the-record to a degree sufficient to preclude any subsequent challenge to a judgment by either of the individual defendants arising out of the defendants' joint representation. *Id.*

A.  The Unconsummated Settlement:
    Defense Counsel's Loyalties Are Divided
    Between the Municipal and Individual Defendants

The fundamental conflict at issue is between the interests of the municipal defendant and that of the two individual defendants such that continued joint representation is impossible.  As a result, defense counsel -- a department of the municipal defendant, thus best defined as "in house" counsel for the City of New York, has taken a course of conduct detrimental to the interests of the individual defendants for the sole benefit of the municipal defendant.  This is a classic, actual conflict arising from joint representation, which has been demonstrably prejudicial to the individual defendants.  Disqualification is the only appropriate remedy under these circumstamces.

More precisely, defense counsel entered into an agreement to settle this action by which (i) defendant City of New York would pay plaintiff $17,500, and (ii) plaintiff would dismiss the action with prejudice.  (Exhibit 2 at pp 1-2).  This agreement would have ended the litigation in all respects without a finding of liability against any of the defendants, and wityhout imposing any costs or fees on either of the individual defendants.

However, defense counsel conditioned the consummation of the agreement by insisting that plaintiff waive a specific claim against the City of New York that is entirely unrelated to either of the individual defendants.  Whether plaintiff agreed to such a waiver would not in any way advance either individual defendant's interests, as they had no involvement in the matter underlying this other, separate claim plaintiff had against the municipal defendant.

5

Thus, defense counsel was faced with a dilemma. On the one hand, they could settle the case (based on terms negotiated by defense counsel that were deemed acceptable to the Law Department and its municipal client when it was first reached) so that their individual clients avoided a finding of liability and any costs or expenses. Such a decision would leave plaintiff free to pursue another matter in a possible plenary action, which the City of New York would have to defend elsewhere. Or, counsel could refuse to proceed with the settlement solely because plaintiff would not agree to release the City from an entirely unrelated matter.

Defense counsel chose the latter. As a result, the parties appeared for depositions, various motions were and will be made, and the case will continue towards trial, leaving the individual defendants exposed to potential liability with no guarantee of indemnification. All because the City of New York belatedly decided that its need for the release from the other claim was more important than the individual defendants' interest in being released from this case without liability or costs.

There is no reason to believe that such a decision was made after consultations with the individual clients. Nor is there any basis to think that they actually would have knowingly and voluntarily understood and consented to such a course of conduct under the circumstances. This scenario establishes an actual conflict that has resulted in substantial and ongoing prejudice to the individual defendants.

B.   Concordant Representation Compels
     A Hearing into the Alleged Waiver,
     If Disqualification is Not Granted

The Second Circuit has long since held that it is "prima facie improper" for an attorney to simultaneously represent a client and another party with interests directly adverse to that client. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976). While the conflict may be waivable, the attorney "must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." Id.

Moreover, an "attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005). The Second Circuit has noted that while "some courts have treated the presumption that confidences are shared within a firm as irrebuttable, there is a 'strong trend,' which we join, toward allowing the presumption of confidence sharing within a firm to be rebutted." *Id.* (Internal citations and collection of cases omitted).

Here, defendant Bania has commenced a personal injury action against the City of New York concerning injuries he alleged to have occurred while he was on duty and acting in his capacity as a police officer. (Exhibit 6). The City of New York is routinely defended in these state court matters by the Law Department, which is in-house counsel for the municipality.

7

At the same time, Bania is currently represented by the very same office in this action. It is not disputed that the two lawsuits are factually unrelated and are pending in different forums. However, as both cases turn in no small part on Bania's testimony, his credibility as a witness (or party) is a key component of both cases. His counsel in the instant action has full and complete access to his client's personnel and disciplinary records, and has gained the benefit of whatever confidences have been made to him during the course of this action. The conflict of interests and potential problems arising from such concurrent representation are self-evident.

While counsel may be able to rebut the presumption of shared confidences, the fact that these two defendants are both co-defendants and adversaries, coupled with their existing employer-employee relationship, requires a hearing into the status of the second lawsuit, the issue of the Law Department's role in the concurrent representation, and the voluntariness of any waiver defendant Bania may elect to execute.

C.  The Conflict Between Defendant Bania's
    Deposition Testimony and his purported Letter
    <u>Requesting Representation Requires a Hearing</u>

Disqualification of counsel is necessary where there is a conflict between the attorney's individual interests and that of his or her client. *United States of America v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002), citing, *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993). Moreover, an attorney owes his client undivided loyalty. *GSI Commerce Solutions, Inc.*

8

*v. BabyCenter, L.L.C.*, 618 F.3d 204, 210 (2d Cir. 2010). Such fidelity is compromised when loyalty to a client's interests would run afoul of the attorney's own interests.

      Such a conflict may exist here in light of the sworn testimony of defendant Bania that Mr. Mouton had appeared for and acted on his behalf without any authorization to do so, and without any reasonable basis to believe that he had such authority. While counsel has since produced a letter authorizing representation that would exonerate him from wrongdoing, the letter and the circumstances surrounding its production are troubling and require further inquiry.

      As set forth in the accompanying declaration of Michael Lumer, the exhibits thereto, and the docketed filings in this action, it is beyond dispute that (a) Mr. Mouton answered for defendant Bania on August 15, 2011, and appeared for him in this action thereafter, and that (b) on December 16 and 28, 2011, Bania gave sworn testimony that he did not authorize Mr. Mouton, or the Law Department itself, to act for him until about December 14, 2011. Nothing contained in Mr. Bania's testimony indicates any confusion over the questions posed nor does he suggest that his memory on this point had faded.

      Thus, when defendant Bania's deposition was adjourned on December 16, 2011, the record contained unambiguous statements by the defendant that his first communications with his counsel occurred nearly four months after Mr. Mouton had appeared for him. At no time during the December 16 deposition did Mr. Mouton make

9

any statement or offer any suggestion, on or off the record, that Mr. Bania was mistaken in this regard. At no time during the deposition did Mr. Mouton take any steps to have his client correct the record. Rather, he sat silently, offering no indication that this testimony was anything other than accurate.

At the outset of Mr. Bania's continued deposition twelve days later, he was offered the opportunity to change or modify any of the answers he had given previously. He stated that there were no answers that needed to be changed. (Exhibit 5). The defendant then reconfirmed that his communications with Mr. Mouton and the Law Department did not begin until December 2011. Once again, Mr. Mouton sat silently, offering no correction.

What is striking about this series of events is that the testimony in question goes directly to something about which the attorney himself should have personal knowledge. Put differently, if Mr. Bania had met with or retained Mr. Mouton previously, then Mr. Mouton surely would have known that and would have been obligated to correct his client's fundamentally inaccurate testimony. Indeed, given the gravamen of the testimony, it is difficult to comprehend why Mr. Mouton failed to immediately step in, or, at a bare minimum, speak with his client about the underlying facts in an effort to cure the defective testimony.

Even assuming that counsel was caught off-guard by his client's testimony and was unsure how to respond at that moment, such a momentary lapse would not

explain counsel's abject failure to offer an explanation in the days following the deposition. Certainly, there is no immediately plausible explanation for why Mr. Bania was allowed to confirm that same testimony twelve days later.

Finally, when this testimony was presented by plaintiff in the January 3, 2012, letter to the Court, defense counsel responded with a three-page letter that completely ignored the entire subject of Bania's testimony or the allegation that Mr. Mouton may have acted unethically. The lack of a substantive response is staggering; it is unfathomable that an attorney, confronted with an allegation made directly to a federal district court that he engaged in misconduct or deliberately acted without authority would not defend himself, if the charges were false. In that regard, Mr. Mouton's silence speaks volumes.[1]

On January 18, 2012, defense counsel produced a heavily redacted copy of a letter from counsel to Mr. Bania dated August 4, 2011, and a form response, purportedly signed by Mr. Bania and dated August 10, 2011, authorizing the Corporation Counsel to act as his counsel in this matter. To date no explanation has been offered for Mr. Bania's dramatically different testimony, or counsel's silence during the course of the two days of deposition.

---

[1] Mr. Mouton finally responded on January 13, 2012, when the Court inquired directly about his non-response. Mr. Mouton stated then that he not answered because the allegations were "baseless." This explanation makes no sense, as presumably the subject of a "baseless" allegation made in open court would most certainly want to respond at the first available opportunity.

In any event, defense counsel has explained his conduct by offering a document he claims was signed by his client in direct contradiction to the client's own testimony.  There are only two possible explanations for this divergence: one is that Bania repeatedly gave false or plainly incorrect testimony without correction by his counsel, which ought to allow, at a minimum, plaintiff the opportunity to continue the deposition and further explore issues concerning Mr. Bania's memory.  Alternatively, the documents presented are not entirely accurate, which would raise other, more troubling issues.

This issue, under these circumstances, requires a hearing to more fully examine (a) the contradictions between Bania's deposition testimony and the form proffered by defense counsel, and (b) whether any conflict arising therefrom can be or has been waived.

**CONCLUSION**

For the foregoing reasons, the Court should issue an order (i) disqualifying the Law Department, or, at a minimum, ACC Gregory Mouton, from continuing as counsel in this matter; or, in the alternative, (ii) scheduling a hearing to resolve the factual conflicts presented and to determine whether the individual defendants have knowingly and voluntarily waived those conflicts that can be waived.

Dated: Brooklyn, New York
      February 3, 2012

                              REIBMAN & WEINER
                              Attorneys for Plaintiffs

                              /s/
           By:   _____
                              Michael B. Lumer (ML-1947)
                              26 Court Street, Suite 1808
                              Brooklyn, New York 11242
                              (718) 522-1743

To:   Gregory Mouton, ACC (By ECF)